FILED
2024 Jun-27  PM 03:11
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| LETA G. PARSONS, both directly on behalf of herself and derivatively on behalf of Stratford Enterprises, Inc., | ) ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:24-cv-75-GMB |
| | ) | |
| MICHAEL EDWARD OSBORN, *et al*., | ) ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Leta G. Parsons filed a complaint on her own behalf and derivatively on behalf of Stratford Enterprises, Inc. ("Stratford") against Defendants Michael Edward Osborn, Deborah Stern, Melissa McCombs, Courtney Dunn, Kalista Alexander, and Stratford, which she named "solely as a necessary party." Doc. 1 at 1. In response, Osborn filed a Motion to Dismiss or Abstain Based Upon Prior Pending Divorce Court Action. Doc. 7. The motion is fully briefed (Docs. 7, 13, 14) and ripe for decision. For the reasons to follow, the motion is due to be granted in part, and all claims in the complaint will be dismissed without prejudice.

### I.  STANDARD OF REVIEW

Osborn's motion implicitly questions the court's subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). Doc. 7. Subject matter

jurisdiction is the statutorily conferred power of the court to hear a class of cases. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 503 (2006).   A motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) takes one of two forms: a "facial attack" or a "factual attack." *Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990).   "Facial attacks challenge subject matter jurisdiction based on the allegations in the complaint, and the district court takes the allegations as true in deciding whether to grant the motion." *Morrison v. Amway Corp.*, 323 F.3d 920, 925 n.5 (11th Cir. 2003).   On the other hand, "[f]actual attacks challenge subject matter jurisdiction in fact, irrespective of the pleadings.   In resolving a factual attack, the district court may consider extrinsic evidence such as testimony and affidavits." *Id.*

Osborn's motion presents a factual attack to jurisdiction.   For this reason, the court is not confined to the four corners of the complaint and will consider the evidence Osborn submitted in support of his motion.

## II.   FACTUAL BACKGROUND

Parsons and Osborn married in 2011.   During the marriage, the couple purchased Stratford[1] with each owning 50 percent of the business. Doc. 1 at 3.

---

[1] Stratford provides "care, comfort, and quality of life to a person with a serious illness who is approaching the end of their life." Doc. 1 at 3.

Their marriage did not last, however, and Osborn filed for divorce. Doc. 1 at 3. Parsons responded to the divorce complaint (Docs. 7-2, 7-3) and later filed her complaint in this court on her own behalf and derivatively on behalf of Stratford for minority shareholder oppression, breach of fiduciary duty, violations of stockholder inspection rights under Alabama Code § 10A-2A-16.02, civil conspiracy, and conversion. Doc. 1 at 9–11.   The court first examines the relevant divorce proceedings and then the pending federal complaint.

## A.   Divorce Proceedings

Osborn filed for divorce on April 23, 2023, in the Circuit Court of Shelby County, Alabama. Doc. 1 at 3; *see also* Doc. 7-1.   At the time he filed for divorce, both he and Parsons lived in Alabama. Doc. 7-1 at 2.   Parsons answered the divorce petition and filed a counterclaim seeking alimony and all outstanding shares in Stratford, among other things. Docs. 7-2 at 3–4.

On June 9, 2023, Parsons filed an amended counterclaim. Doc. 7-3.   The pleading included counterclaims against Osborn and added, as additional counterclaim defendants, Stratford and fictitious parties "possessing the requisite authority and having reasonable access to the corporate records of Stratford Enterprises, Inc. and who have failed and refused [Parsons] the right to inspect and copy the business records of Stratford." Doc. 7-3 at 3.   The amended counterclaim

alleges that Parsons is a 50 percent shareholder of Stratford while Osborn is a shareholder, director, and the President of Stratford; is actively involved in Stratford's operations; and "has unfettered access to and control of all of the business records of Stratford." Doc. 7-3 at 4.

Parsons contends that "[o]n several occasions within the past 12 months," she made written requests for Stratford's corporate documents, financial information, and operations information to Osborn, Stratford, "and others with authority regarding Stratford's operations," but her requests were "largely ignored except for the providing of undocumented information sent by a few email replies." Doc. 7-3 at 4–5.   She made another written demand to inspect and copy Stratford's corporate and financial records on May 3, 2023, but Osborn and Stratford again ignored that demand. Doc. 7-3 at 5.   Counsel for Osborn and Stratford, however, "forwarded a copy of unsigned purported bylaws of Stratford and unsupported typewritten profit and loss statements and balance sheets." Doc. 7-3 at 5.   Parsons' lawyer made at least three additional requests for corporate records and information to no avail. Doc. 7-3 at 5.   Parsons seeks monetary damages [2] for the refusal to allow an inspection of Stratford's records, along with other forms of relief. Doc. 7-3 at 7.

---

[2] Specifically, Parsons seeks "a statutory penalty of 10% of the value of her shares of stock in Stratford" pursuant to Alabama Code § 10A-2A-16.02(d)(2). Doc. 7-3 at 7.

By agreement of the parties, the circuit court ordered Osborn and Stratford to produce specific records on or before June 29, 2023, and to continue to produce similar records for the next 36 months. Doc. 7-5 at 1.   The circuit court reserved ruling on Parsons' right to seek damages, penalties, and fees for Osborn's noncompliance with her earlier demands to inspect Stratford's records. Doc. 7-5 at 2.   The order also found that Parsons should be allowed to fulfill her duties as a director, officer, and shareholder, and to "continue to directly participate in Stratford's governing body meetings and operations." Doc. 7-5 at 2.

Parsons alleges elsewhere in the federal complaint that Osborn filed an *ex parte* Motion for Temporary Restraining Order against her in the divorce action. Doc. 1 at 8.   In the motion, he asked the court to enjoin Parsons from communicating with Stratford's employees, patients, or third-party vendors and from coming onto Stratford's property. Doc. 1 at 8.   This motion remains pending in the divorce proceedings. Doc. 1 at 8.

## B.    The Federal Complaint

Parsons filed the instant complaint in this court on January 23, 2024. Doc. 1. The complaint invokes the court's diversity jurisdiction pursuant to 28 U.S.C. § 1332 and alleges that Parsons is a resident citizen of Florida, while Osborn and the other named defendants are resident citizens of Alabama. Doc. 1 at 2–3.   The complaint

alleges that the amount in controversy exceeds $75,000. Doc. 1 at 2.

Beginning approximately two years ago, Parsons claims that the defendants "engaged in a pattern of squeezing out and oppressing Parsons by eliminating Parsons' reasonable expectations as a shareholder in Stratford." Doc. 1 at 3.   As examples related to Osborn, Parsons alleges that he offered to buy her interest in Stratford "for an amount significantly less than the real value of [her] interest" and "caused all of [her] credit cards to be frozen." Doc. 1 at 4.   Shortly thereafter, Parsons "became aware that Osborn had just filed for divorce." Doc. 1 at 4.   Osborn refused to allow Parsons to attend quarterly Stratford Governing Body meetings and blocked her from entering Stratford's office building. Doc. 1 at 4.   Parsons also alleges that Osborn "transferred Stratford monies" to an entity he owned exclusively. Doc. 1 at 5.

Parsons' complaint includes examples of the defendants' efforts to squeeze her out of the business.[3]   She contends that the defendants ignored her requests for information and records about Stratford and have refused to hold a Governing Body meeting since the first quarter of 2023.[4] Doc. 1 at 4.   In addition, Parsons accuses

_____

[3] The complaint does not contain any individual allegations against Stern, McCombs, Dunn, or Alexander.   Instead, the factual allegations generically refer to "Defendants" except when describing Osborn's actions. *See* Doc. 1 at 3–5.

[4] Parsons later alleges that she "believed a Governing Body meeting had been scheduled during

the defendants of "systematic exclusions" from Stratford such that she has "limited knowledge and information concerning the direction or management of the Company, the financial health of the Company, and/or any other strategic decisions regarding the Company." Doc. 1 at 5.   For instance, "Parsons just recently became aware of a Medicare audit of Stratford and related contingent liability totaling approximately $2.5 million, half of which [she] is personally liable for." Doc. 1 at 5.   She claims the "Defendants have frozen [her] corporate credit cards" but Osborn continues to use corporate credit cards for his personal expenses. Doc. 1 at 4.

Parsons alleges that Osborn receives $300,000 in annual compensation from Stratford, and she receives only $74,000 annually. Doc. 1 at 4.   She contends the defendants have "wasted Company assets by paying excessive compensation and other fringe benefits to Osborn and others, to the exclusion of Parsons, and by failing to efficiently manage Company staff, resulting in excessive labor costs." Doc. 1 at 5.   For example, she asserts that Osborn paid his divorce attorney a retainer of $100,000 using Stratford's assets. Doc. 1 at 5.   In conclusion, Parsons claims that the defendants "are operating the business of Stratford as if Osborn is the only shareholder, completely ignoring and denying the rights and expectations of Parsons

---

the fall of 2023 at her request and upon arriving at the Stratford office building to attempt the meeting, Osborn blocked the doors to the office and would not let Parsons inside." Doc. 1 at 8.

as a 50% shareholder." Doc. 1 at 5.

## III.   DISCUSSION

Osborn makes two arguments in support of his motion to dismiss or abstain. He first argues that the court lacks jurisdiction under the domestic relations exception to diversity jurisdiction. Doc. 7 at 5–9.   In the alternative, he contends that the court should abstain from deciding this case under the domestic relations or *Colorado River* abstention doctrines.   For the following reasons, the court concludes that the domestic relations exception to jurisdiction does not apply to this case, but the court must abstain from exercising its jurisdiction.

### A.   Domestic Relations Exception

The Supreme Court has long recognized a narrow domestic relations exception to federal diversity jurisdiction. *See Ankenbrandt v. Richards*, 504 U.S. 689, 693–94 (1992).   The exception is rooted in *Barber v. Barber*, 62 U.S. 582, 583 (1859), in which the Supreme Court held that federal courts have no jurisdiction over suits "upon the subject of divorce or for the allowance of alimony" even if the enforcement of an alimony decree is within the scope of federal jurisdiction.   This judge-made rule has not changed much in almost 165 years—under the modern rule, "the domestic relations exception encompasses only cases involving the issuance of a divorce, alimony, or child custody decree." *Ankenbrandt*, 504 U.S. at 704; *see also*

*Marshall v. Marshall*, 547 U.S. 293, 306 (2006) (affirming that "only divorce, alimony, and child custody decrees remain outside federal jurisdictional bounds").

For example, the plaintiff in *Ankenbrandt*, 504 U.S. at 691, sued her ex-husband and her ex-husband's girlfriend in federal court for monetary damages, alleging that they sexually and physically abused her daughters. The Supreme Court concluded that the plaintiff was not seeking the issuance of a child custody decree; she alleged that the defendants committed torts against her children. *Id*. at 704. The Supreme Court therefore held that federal jurisdiction under 28 U.S.C. § 1332 was "proper in this case." *Id*.

Here, Parsons similarly does not request the issuance of a divorce, alimony, or child custody decree. Instead, she seeks monetary damages[5] for tort claims relating to minority shareholder oppression, breach of fiduciary duty, violations of the inspection rights of stockholders, civil conspiracy, and conversion. Doc. 1 at 9–11. These claims fall outside of the scope of the domestic relations exception on their face. *See Ankenbrandt*, 504 U.S. at 704.

Osborn disagrees and urges the court to consider the substance of the claims

---

[5] Parsons also asks the court to appoint a receiver "to take control of, operate, and manage Stratford . . . to prevent any further waste and diminution in the value of Stratford, and to otherwise protect Plaintiff's interest in Stratford." Doc. 1 at 12. This request does not change the essential nature of her claims.

9

over the labels in the complaint. Doc. 7 at 7–9.   The court does have an obligation to "sift through the claims of the complaint to determine the true character of the dispute to be adjudicated." *Kirby v. Mellenger*, 830 F.2d 176, 178 (11th Cir. 1987); *Jagiella v. Jagiella*, 647 F.2d 561, 565 (5th Cir. Unit B 1981).   While Osborn highlights the connections between the claims here and the issues before the circuit court in the divorce proceedings (Doc. 7 at 8–9), a factual nexus does not sweep the claims here into the domestic relations exception.   Instead, this overlap is a reason for the court to abstain from asserting its jurisdiction, as discussed below.

Moreover, Parsons' claims do not implicate any of the policy concerns underpinning the domestic relations exception.   Divorce, alimony, and child custody decrees often require a court to retain jurisdiction following the case's completion or to appoint social workers to ensure compliance. *Ankenbrandt*, 504 U.S. at 703–04.   State courts are better suited for this work because of their relationships with the relevant state agencies. *Id*. at 704.   Just as critically, state courts have a "special proficiency" in handling divorce, alimony, and child custody decrees. *Id*.   Here, no court oversight would be necessary after entering a verdict, no state agency would be helpful in enforcing the court's decision, and no state courts have any "special proficiency" in the claims. *See DiRuggiero v. Rodgers*, 743 F.2d 1009, 1020 (3d Cir. 1984) (holding that the domestic relations exception did

not bar a tort claim because continuing supervision by a state agency was unnecessary and federal district courts are familiar with state tort law).

Finally, four of the five counts include claims against defendants other than Osborn.   The domestic relations exception generally does not apply to third parties. *Stone v. Wall*, 135 F.3d 1438, 1441 (11th Cir. 1998); *see also Ankenbrandt*, 504 U.S. at 704 n.7 (finding that the domestic relations exception did not apply to tort claims against a third party).   This is because suits against third parties do not generally involve the issuance or modification of a divorce, alimony, or child custody decree. Parsons' case is no exception.

For these reasons, the court finds that the narrow domestic relations exception does not divest the court of jurisdiction.   That conclusion, however, does not end the inquiry.

## B.    Abstention

In *Ankenbrandt*, 504 U.S. at 705–06, the Supreme Court suggested that certain cases involving domestic relations may be appropriate for abstention under the doctrine set out in *Burford v. Sun Oil Company*, 319 U.S. 315 (1943):

> It is not inconceivable . . . that in certain circumstances, the abstention principles developed in *Burford* . . . might be relevant in a case involving elements of the domestic relationship even when the parties do not seek divorce, alimony, or child custody.   This would be so when a case presents "difficult questions of state law bearing on policy

11

problems of substantial public import whose importance transcends the result in the case then at bar."

(quoting *Colo. River Water Cons. Dist. v. United States*, 424 U.S. 800, 814 (1976)). "Such might well be the case if a federal suit were filed prior to effectuation of a divorce, alimony, or child custody decree, and the suit depended on a determination of the status of the parties." *Id*. at 706.   This being said, the Supreme Court warned "that abstention from the exercise of federal jurisdiction is the exception, not the rule . . . . Abstention rarely should be invoked, because the federal courts have a virtually unflagging obligation . . . to exercise the jurisdiction given them." *Id*. at 705 (internal quotations and citations omitted).

In fact, the Eleventh Circuit [6] later explained that the domestic relations exception does not justify abstention in all diversity cases involving intra-family disputes. *Kirby*, 830 F.2d at 178.   Instead, "[f]ederal courts should not abstain when the following policies favoring federal abstention are absent: the strong state interest in domestic relations matters, the competency of state courts in settling family disputes, the possibility of incompatible federal and state decrees in cases of

---

[6] Osborn notes that "the case law is not entirely clear on whether domestic relations matters should be analyzed under their own abstention rubrics or within the parameters of better-known abstention doctrines." Doc. 7 at 9.   A number of decisions within the Eleventh Circuit, however, suggest that courts should consider domestic relations matters to have their own abstention framework. *See Alliant Tax Credit 31, Inc. v. Murphy*, 924 F.3d 1134, 1146 (11th Cir. 2019); *Stone v. Wall*, 135 F.3d 1438, 1441 (11th Cir. 1998); *Ingram v. Hayes*, 866 F.2d 368, 370 (11th Cir. 1988).

continuing judicial supervision by the state, and the problem of congested dockets in federal courts." *Ingram*, 866 F.2d at 370 (quotation marks and citation omitted). As a result, the Eleventh Circuit has instructed the district courts to dismiss an action "only if hearing the claim would mandate inquiry into the marital or parent-child relationship." *Id.* (citing *Jagiella*, 647 F.2d at 565).

Here, the underlying divorce action remains pending in the state circuit court. The appropriate division of the marital property, including Stratford, is yet to be determined.   The circuit court has exercised some measure of control over Parsons, Osborn, and Stratford in that it entered an order confirming Parsons' right to access Stratford's documents.   The question of whether to impose damages based on any infringement on Parsons' access to these documents remains pending in that court. *See* Doc. 7-5 at 1–2.   The circuit court has yet to make any determination about the propriety of Osborn's actions or the merits of Parsons' claims against the other individual defendants[7] in the divorce proceedings.   And Parsons' requested relief in the divorce counterclaim includes all of Stratford's shares, along with periodic alimony and alimony in gross. Doc. 7-2 at 4.   The circuit court has yet to determine the division of property or the propriety of Parsons' alimony requests.   These

---

[7] Although the amended counterclaim names fictitious defendants and does not specifically identify the individual defendants in the federal complaint other than Osborn, the counterclaim's description of the fictitious defendants points directly to the individual defendants here.

determinations plainly implicate the claims in this action and the relief Parsons seeks in her federal complaint.

Considering all of the factors favoring abstention, the court finds on the whole that abstention is warranted.  The claims and requested relief in the federal complaint are intertwined with the issues before the circuit court.  The state's interest in divorce proceedings is significant and the state court would be forced to delay action on the divorce—or at least the division of property—until the outcome of the federal complaint since any relief granted here directly impacts the marital property.  Moreover, there is a material risk of inconsistent federal and state decrees since at least one of the claims is identical and others are related.  Once the circuit court resolves the divorce proceeding, however, these concerns dissipate.  Parsons would be free at that time to refile her federal complaint if the divorce proceedings do not eliminate the need to do so.

As anticipated by the Supreme Court in *Ankenbrandt*, 504 U.S. at 706, this case presents a situation where "federal suit w[as] filed prior to effectuation of a divorce, . . . and the suit depend[s] on a determination of the status of the parties." Under these circumstances, the court must abstain from exercising its diversity jurisdiction.[8] *See id.*; *Ingram*, 866 F.2d at 369–70.

---

[8] Because of this determination, the court does not consider abstention under *Colorado River*.

## IV.   CONCLUSION

For these reasons, it is ORDERED that the Motion to Dismiss or Abstain Based Upon Prior Pending Divorce Court Action (Doc. 7) is GRANTED in part and DENIED in part.   The court declines to exercise its jurisdiction over the complaint at this time and will enter a separate final order.

DONE and ORDERED on June 27, 2024.

GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE